**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINA**
**Elkins Division**

<div style="border:1px solid">
ELECTRONICALLY
FILED
07/27/2026
U.S. DISTRICT COURT
Northern District of WV
</div>

**MOUNTAIN LINEN SERVICE, LLC,**

     **Plaintiff,**

**v.**

    **CIVIL ACTION NO.** _2:26-CV-30_
    **HONORABLE** _Kleeh_

**THELAUNDRYLIST.COM, INC. d/b/a**
**THE LAUNDRY LIST; and BRIAN B.**
**COHEN,**

     **Defendants.**

## COMPLAINT

NOW COMES the Plaintiff, Mountain Linen Service, LLC, by and through counsel, Farmer, Cline & Campbell, PLLC, and hereby states the following for its Complaint:

### PARTIES

1.	Plaintiff, Mountain Linen Service, LLC ("Plaintiff" or "Mountain Linen") is a West Virginia limited liability company and maintains its principal place of business at #1 Fassifern Field, Slatyfork, West Virginia 26291.

2.	Defendant TheLaundryList.Com, Inc. d/b/a The Laundry List ("Laundry List") is a California corporation and maintains its principal place of business at 5010 N. Parkway, Calabasas Suite 203, Calabasas, California 91302.

3.	Upon information and belief, Defendant Brian B. Cohen ("Defendant Cohen") is a resident of the State of California.

4.	Laundry List and Defendant Cohen are sometimes referred to collectively as the "Defendants."

1

## JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over the parties and claims asserted in this action as the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.      Pursuant to 28 U.S.C. § 1391, this Court is an appropriate venue for this action as the causes of action alleged herein arose in Pocahontas County, West Virginia.

7.      Defendants are subject to the jurisdiction and venue of this Court.

## FACTUAL ALLEGATIONS

8.      Mountain Linen is an industrial launderer that provides commercial laundry and linen services to businesses in the State of West Virginia.

9.      Mountain Linen depends on reliable, properly functioning equipment to process linens and other products for its customers.

10.     Laundry List is a commercial business that sells used and rebuilt industrial laundry equipment. On its website, Laundry List touts itself as "the #1 seller of used and rebuilt industrial laundry machinery in North America."[1]

11.     Laundry List specializes "in the sale of used industrial equipment from Tunnel Washing Systems, Flatwork Feeders and Folders, Material Handling to Power Plants."[2]

12.     At all relevant times, Defendant Cohen acted as the owner, president, officer, and authorized agent of Laundry List, and within the scope of that agency and employment. Laundry List is therefore liable for Defendant Cohen's conduct alleged herein under the doctrine of *respondeat superior*, in addition to its direct liability for representations made on its behalf.

---

[1] *See* https://thelaundrylist.com/ (last visited July 10, 2026).
[2] *See id*.

13.     On or about May 17, 2023, Mountain Linen entered into a purchase order (the "May Purchase Order"), whereby Mountain Linen agreed to purchase a Laundry List rebuilt 2011 Milnor PulseFlow 10-mod, 110lb CBW; a Laundry List rebuilt 2007 Milnor Single Stage Press; an inspected and certified 2017 Milnor Shuttle; an inspected and certified 2017 Milnor System Dryers with 2017 Milnor Lint Vac; and an inspected and certified 2017 Milnor Conway 4-Pocket Loading Conveyor with Weight Cells (collectively referred to as the "Milnor Tunnel System") for the purchase price of $425,000.00. [*See* May Purchase Order, attached as **Exhibit A**.]

14.     Prior to and at the time of sale, Defendants made representations of fact regarding the industrial equipment Mountain Linen was seeking, including that the Milnor Tunnel System was rebuilt, inspected, and certified and that it would operate reliably in a commercial setting. These representations became part of the basis of the bargain.

15.     At the time of contracting, Defendants knew the particular purpose for which Mountain Linen required the industrial equipment, namely, the high-volume commercial processing of linens for Mountain Linen's customers. Additionally, Defendants knew that Mountain Linen was relying on Laundry List to select, furnish, deliver, and install rebuilt, inspected, and certified industrial equipment, including but not limited to the Milnor Tunnel System, suitable for that purpose.

16.     Mountain Linen additionally agreed to purchase a Laundry List rebuilt 2004 Milnor System Dryer for $45,000.00; an inspected and certified Ingersoll Rand 60HP Air Compressor for $10,000.00; an inspected and certified 2022 Kaesar Refrigeration Dryer for $4,000.00; an inspected and certified conveyor for no amount; and an inspected and certified Milnor - Remote / Load Control for $4,500.00. [*See id*.]

3

17.    Laundry List and Defendant Cohen recommended that Mountain Linen purchase spare parts from Laundry List to keep spare parts on hand and train its employees to repair the Milnor Tunnel System as needed.

18.    Relying on Laundry List's and Defendant Cohen's recommendation, Mountain Linen purchased spare parts from Laundry List in an amount of $88,828.51. [*See* Parts Price List, attached as **Exhibit B**; and **Exhibit A**].

19.    Mountain Linen agreed to pay for the freight charges to have the industrial equipment and spare parts delivered to its place of business in Slatyfork, West Virginia, in an amount of $53,000.00. [*See id*.]

20.    In total, Mountain Linen agreed to pay an amount of $630,328.28 to purchase the industrial equipment and have it delivered.

21.    Laundry List agreed to install the Milnor Tunnel system and to provide the riggers, technicians, machinery, and tools for the installation for an amount of $182,000.00. [*See id*.]

22.    On or about October 17, 2023, Mountain Linen entered into a second purchase order (the "October Purchase Order"), whereby Mountain Linen agreed to purchase a used, as is, where is, Milnor Dryer Take Away Conveyor for the purchase price of $7,000.00. [*See id*.]

23.    Defendants had represented to Mountain Linen that its industrial equipment, including the Milnor Tunnel System, had been rebuilt, remanufactured, inspected, and certified and would be delivered and installed in proper operating condition.

24.    Mountain Linen relied upon Defendants' representations concerning the industrial equipment's condition, expected useful life, and fitness for Mountain Linen's commercial laundry operations.

25.    On or about November 2, 2023, the first delivery of the industrial equipment arrived at Mountain Linen's place of business without any notice and machinery to move and install the industrial equipment.

26.    Mountain Linen was required to incur additional costs to secure a flatbed wrecker and other machinery to unload and install the industrial equipment.

27.    On or about December 18, 2023, a second delivery of the industrial equipment arrived at Mountain Linen's place of business again without any notice.

28.    Contrary to the May Purchase Order and October Purchase Order, and Defendants' representations to Mountain Linen, the industrial equipment, including the Milnor Tunnel System, was not rebuilt as advertised and the equipment repeatedly failed to operate properly.

29.    Laundry List performed extensive onsite repairs, including software updates, valve replacements, and approximately eighteen hours of welding to address cracks in the tunnel.

30.    All of the spare parts Mountain Linen purchased from Laundry List were used in attempting to repair the industrial equipment, substantially depleting Plaintiff's replacement-parts inventory.

31.    After the tunnel was placed into operation, it repeatedly caught and tore Plaintiff's linen and failed to operate as represented.

32.    Plaintiff discovered that the tunnel had not been in fact rebuilt, inspected, or certified.

33.    A Milnor representative inspected the tunnel and reported that it lacked meaningful longevity or remaining useful life.

34.     On or about July 11, 2023, the air compressor failed. A technician advised Plaintiff that the compressor had reached the end of its useful life, requiring Plaintiff to purchase a replacement for approximately $68,000.00.

35.     Laundry List's defective equipment and repeated repair attempts disrupted Mountain Linen's business operations for nearly two years, reduced production, increased labor costs and caused damages.

36.     Laundry List and Defendant Cohen have stopped responding to Mountain Linen's calls and emails.

37.     As a direct and proximate result of Laundry Linen's actions, Plaintiff has suffered damages, including, but not limited to, increased costs, lost profits, incidental and consequential damages.

38.     Mountain Linen has incurred, and continues to incur, additional incidental damages, including expenses reasonably incurred in the inspection, care, and custody of the defective Milnor Tunnel System and other damaged industrial equipment, and in effecting cover and mitigation.

<u>**COUNT I – BREACH OF CONTRACT**</u>
**(Against Laundry List)**

39.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

40.     Laundry List had a covenant of good faith and fair dealing in its contract with Mountain Linen to sell, deliver, and install rebuilt, inspected, and certified industrial laundry equipment.

41.	A valid and enforceable contract existed between Mountain Linen and Laundry List, supported by adequate consideration.

42.	Mountain Linen performed all conditions precedent and all obligations required of it under the Contract.

43.	Laundry List breached the Contract by delivering the Milnor Tunnel System that was in fact defective, nonconforming, and unfit for its intended use.

44.	Laundry List additionally breached its agreement to install the industrial equipment, causing Mountain Linen to incur costs to rent machinery to unload and install the equipment.

45.	As a direct and proximate result of Laundry List's breach, Mountain Linen has been damaged in an amount to be proven at trial, including the difference in value of the Milnor Tunnel System and Air Compressor as warranted and as delivered, the value of Plaintiff's destroyed product, increased labor costs, costs of the machinery to unload and install the industrial equipment, lost profits, and incidental and consequential damages, together with prejudgment interest pursuant to West Virginia Code § 56-6-31.

<div align="center">

**<u>COUNT II</u> – BREACH OF EXPRESS WARRANTY**
**(Against Laundry List and Defendant Cohen)**

</div>

46.	Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

47.	The May Purchase Agreement and October Purchase Agreement are contracts for the sale of goods governed by Article 2 of the Uniform Commercial Code as adopted in West Virginia by statute, West Virginia Code §§ 46-2-101 *et seq*.

48.     Under West Virginia Code § 46-2-313(1)(a), "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." W. Va. Code § 46-2-313(1)(a).

49.     Under West Virginia Code § 46-2-313(1)(b), "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." W. Va. Code § 46-2-313(1)(b).

50.     Laundry List, by its affirmations of fact, promises, and descriptions of the industrial equipment, including those set forth in the May Purchase Agreement and October Purchase Agreement, sales literature, specifications, and communications with Defendant Cohen, created express warranties that the Milnor Tunnel System would conform to those affirmations, promises, and descriptions, which became part of the basis of the bargain.

51.     The industrial equipment failed to conform to Laundry List's express warranties, as described above.

52.     Mountain Linen notified Defendants of the breach within a reasonable time after Mountain Linen discovered or should have discovered the breach, as required by West Virginia Code § 46-2-607(3)(a).

53.     As a direct and proximate result of Defendants' breach of express warranty, Mountain Linen has suffered damages as set forth herein, including direct, incidental, and consequential damages recoverable under West Virginia Code §§ 46-2-714 and 46-2-715.

## COUNT III - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Laundry List and Defendant Cohen)

54.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

55.     Laundry List is a merchant with respect to goods of the kind sold, namely industrial laundry equipment.

56.     "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." W. Va. Code § 46-2-314(1).

57.     West Virginia law mandates that goods to be merchantable must be at least such as, among other things: "(a) pass without objection in the trade under the contract description"; "(b) in the case of fungible goods, are of fair average quality within the description"; and "(c) are fit for the ordinary purposes for which such goods are used." W. Va. Code § 46-2-314(2)(a)-(c).

58.     By operation of West Virginia Code § 46-2-314(2)(a)-(c), the May Purchase Agreement and October Purchase Agreement included an implied warranty that industrial laundry equipment was merchantable and that it would pass without objection in the trade, was of fair average quality, and was fit for the ordinary purposes for which such machines are used.

59.     However, the industrial laundry equipment was not merchantable at the time of sale and delivery to Mountain Linen, as it failed to operate correctly, destroyed the very product it was designed to process, and was unfit for the ordinary purposes for which commercial linen machines are used.

60.     Mountain Linen provided Defendants timely notice of the breach pursuant to W. Va. Code § 46-2-607(3)(a).

61.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Mountain Linen has suffered direct, incidental, and consequential damages as set forth herein.

<div align="center">

**COUNT IV – BREACH OF IMPLIED WARRANTY
OF FITNESS FOR A PARTICULAR PURPOSE
(Against Laundry List and Defendant Cohen)**

</div>

62.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

63.     Under West Virginia Code § 46-2-315, "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." W. Va. Code § 46-2-315.

64.     At the time of contracting, Defendants had reason to know the particular purpose for which Mountain Linen required the industrial laundry equipment, namely the high-volume commercial processing of linens for Mountain Linen's customers, and that Mountain Linen was relying on Laundry List's skill and judgment to select and furnish a suitable machine.

65.     By operation of West Virginia Code § 46-2-315, the Contract included an implied warranty that the industrial laundry equipment was fit for that particular purpose.

66.     The industrial laundry equipment was not fit for that particular purpose, as described above.

67.     Mountain Linen provided Defendants timely notice of the breach pursuant to West Virginia Code § 46-2-607(3)(a).

68.     As a direct and proximate result of Defendants' breach, Mountain Linen has suffered direct, incidental, and consequential damages as set forth herein.

### COUNT V – MISREPRESENTATION
**(Against Laundry List and Defendant Cohen)**

69.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

70.     Laundry List and Defendant Cohen made material representations of fact to Mountain Linen that the Milnor Tunnel System sold in the May Purchase Agreement had been "rebuilt," "inspected," and "certified" by Laundry List and/or a third-party.

71.     Each representation was false when made. The equipment had not in fact been rebuilt, inspected, or certified. The equipment had not in fact been inspected or certified to any standard.

72.     A Milnor representative inspected the tunnel after its delivery and installation and reported that he had seen this tunnel before and that it was "end of life."

73.     The representations were material. They went to the central characteristics of the industrial equipment Mountain Linen was purchasing, and a reasonable buyer would attach importance to them in deciding whether to purchase and at what price.

74.     Defendant Cohen knew the representations were false when he made them, or made them recklessly and without any knowledge of their truth, and in either case made them positively as of his own knowledge.

75.     Defendant Cohen made the representations with the intent that Mountain Linen rely on them and be induced to purchase the industrial equipment, pay the eighty percent deposit, and proceed with the transaction.

76.     Mountain Linen was ignorant of the falsity of the representations and had no means, as a buyer with no ability to inspect the rebuilt tunnel equipment, to discover the truth. Mountain Linen relied on the representations.

77.     Mountain Linen's reliance was justified and reasonable given Defendant Cohen's asserted expertise, Laundry List's status as a dealer holding itself out as a rebuilder and certifier, and Mountain Linen's disclosed inability to verify.

78.     As a direct and proximate result, Mountain Linen was damaged in an amount to be proven at trial, including the sums it paid, its consequential and incidental losses, and its lost profits.

79.     Defendants' conduct was intentional, was undertaken with knowledge of the falsity of their representations, and evidences actual malice directed toward Mountain Linen.

### COUNT VI – CONVERSION
**(Against Laundry List and Defendant Cohen)**

80.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

81.     Mountain Linen owned and possessed the right to control the spare parts identified in the Parts Price List, attached hereto as **Exhibit B**, which it purchased for employee training, future maintenance, and repair of the Milnor Tunnel System.

82.     Without Mountain Linen's authorization, Defendants exercised wrongful dominion and control over those parts by taking, using, and consuming them in repeated attempts to repair the defective tunnel system.

83.    Defendants' use and consumption of Mountain Linen's spare parts deprived Mountain Linen of the possession, use, and value of its property and was inconsistent with Mountain Linen's ownership rights.

84.    Defendants knew that the parts belonged to Mountain Linen and nevertheless used and consumed them for Defendants' own benefit rather than supplying the parts necessary to repair the defective tunnel system.

85.    As a direct and proximate result of Defendants' conversion, Mountain Linen is entitled to recover the value of the converted property at the time and place of conversion, together with prejudgment interest, loss-of-use damages, consequential damages, and all other relief permitted by law.

86.    Defendants' wrongful taking of Mountain Linen's property and Defendants' post-conversion conduct evidences actual malice directed toward Mountain Linen.

<u>**COUNT VII – CIVIL CONSPIRACY**</u>
**(Against Laundry List and Defendant Cohen)**

87.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if each were fully set forth in their entirety.

88.    Mountain Linen pleads civil conspiracy not as a stand-alone cause of action, but as a basis for imposing joint and several liability upon each Defendant, and upon each co-conspirator identified below, for the underlying intentional torts alleged in Count V and VI.

89.    Laundry List and Defendant Cohen combined and acted in concert.

13

90.     Laundry List and Defendant Cohen shared a common plan or understanding to accomplish an unlawful purpose, or a lawful purpose by unlawful means to retain Mountain Linen's money and personal property and to convert to their own use property to which Mountain Linen held title or a special property interest, as alleged in Count V and VI.

91.     Defendant Cohen did not act solely as an agent or representative of Laundry List within the ordinary scope of his corporate duties. He acted, in whole or in part, in furtherance of an independent personal stake distinct from any legitimate corporate interest of Laundry List.

92.     The underlying torts were committed, and Mountain Linen was injured thereby.

93.     Each co-conspirator is jointly and severally liable for the full measure of the damages caused by the conversion, whether or not that co-conspirator personally performed the misrepresentation and/or conversion.

**WHEREFORE**, Plaintiff, Mountain Linen Service, LLC, hereby requests that judgment be entered against Defendants TheLaundryList.Com, Inc. and Brian B. Cohen to include the following:

a.     compensatory damages to the extent applicable and permitted by law;

b.     incidental damages to the extent permitted by law;

c.     consequential damages to the extent permitted by law;

d.     pre-judgment and post-judgment interest as allowed by law;

e.     punitive damages to the extent warranted by the facts and applicable law;

f.     attorneys' fees, costs and expenses incurred in connection with this action; and

g.     such other and further relief as the Court deems just and appropriate under the circumstances.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**MOUNTAIN LINEN SERVICE, LLC,**

**Plaintiff**

**By Counsel:**

*s/ J. Tyler Barton*
MATTHEW H. NELSON (WVSB No. 10142)
Email: mhnelson@fcclaw.net
CHRISTIAN A. HUFFMAN (WVSB No. 14205)
Email: cahuffman@fcclaw.net
J. TYLER BARTON (WVSB No. 14044)
Email: jtbarton@fcclaw.net
**FARMER, CLINE & CAMPBELL, PLLC**
453 Suncrest Towne Centre Drive, Suite #300
Morgantown, West Virginia 26505
(304) 225-5990

15